HARRIS v. MILLER.—144 S. W. (2d) 7.

Eastern Section. June 25, 1940.

Petition for Certiorari Denied by Supreme Court, October 6, 1940.

John R. King, of Morristown, for plaintiff in error.
McCanless & Taylor, of Morristown, for defendant in error.

PORTRUM, J. The plaintiff below, S. P. Harris, instituted a suit before a justice of the peace to recover the value of a high-spirited good-blooded colt, about nine months old and weighing around 500 pounds, and valued at the sum of $150. This colt broke away from his trainer on the plaintiff's premises in the town of Morristown, and ran down a lane leading from the street to the stable and out into the street immediately in front of the defendant's automobile when it was struck, receiving injuries from which it died in a short time. The defendant, Mrs. Miller, brought a countersuit for personal injuries received in the accident, and her

mother, Mrs. McGhee, the owner of the automobile, also brought suit to recover for damages to the automobile. The three cases were heard before a justice of the peace who concluded that the accident was unavoidable and he dismissed all three cases; the appeals were prosecuted to the Circuit Court where the cases were heard, after being consolidated, by the trial judge without the intervention of a jury. He likewise was of the opinion that the accident was unavoidable and dismissed the three suits. From his judgment only the plaintiff has appealed seeking a judgment here against Mrs. Miller for personal negligence, and against Mrs. W. M. McGhee, the mother and owner of the automobile, which was being used in her business at the time of the accident.

The theory of the plaintiff's case is reflected by the third assignment of error, the two preceding assignments being general, and the assignment is here copied:

"The court erred particularly in not finding and holding that the defendant, Mrs. Miller, was guilty of negligence in the two following particulars:—(1) In driving her automobile at a rate of speed in excess of the maximum rate of speed allowed by the traffic ordinance in the town of Morristown; to-wit, 30 miles per hour; and (2) in failing to see plaintiff's colt until it jumped from the sidewalk into the street in front of her automobile at which time her automobile was within four or five feet of it, it appearing from the undisputed evidence that with such watchfulness and diligence as the law required of her, she could and would and therefore should have seen said colt running loose, approaching the street near enough to bring it into danger while she was at a distance of 75 or more feet from the point of collision, and by ordinary diligence could have reduced her speed and thus have avoided the collision, which acts of negligence on her part, were the proximate cause of said accident."

(1) Did the plaintiff by a preponderance of the evidence establish the fact that Mrs. Miller was violating the ordinance by operating her car in excess of 30 miles per hour? Mrs. Miller testified that about 450 feet west of the point of the accident she stopped and picked up Will Smith, a neighbor, who sat in the back seat of the car; that she then proceeded to look straight ahead, and when she got to the plaintiff's alley she was running about 20 to 25 miles per hour, and that at that point the plaintiff's colt suddenly jumped in front of her car, when she was within four or five feet of it, and she applied the brakes and did all she could to stop the car, but could not avoid hitting the colt because it was so close to her when she saw it. The car knocked the colt down and pushed it along the street until the car stopped. She states that she picked up Smith at the third house west of the plaintiff's house and about 450 feet from the point of the accident; she started her car in low

gear, and ran about two car lengths, then changed to second gear and ran a short distance and then changed to high gear, and she noticed the speedometer on her car when she changed to high gear and it showed 16 miles per hour, and she was then in front of the second house, which was the first house west of the plaintiff's. She said her car had a slow pickup and did not gain rapidly and that she was in no hurry. Will Smith, the guest in the car with her, testifies that at the time of the accident the car was being operated at the rate of 20 to 25 miles per hour.

The plaintiff has no witnesses who saw the accident and who attempt to give an estimate of the rate of speed of the car at the time of the accident. He does produce a number of expert or practical witnesses who went upon the ground after the accident and who testified as to skid marks upon the street made by the four wheels of the car, and who established that the marks were 63 feet long based upon steps three feet in length. And the colt, weighing about 500 pounds, was dragged the greater part of this distance. The plaintiff's experienced witnesses state that a car being operated at 20 to 25 miles per hour can be stopped at a much shorter distance than 63 feet if the brakes are applied with sufficient force to make four skid marks of this distance. From these physical facts and this expert testimony, it is insisted that an inference arises establishing the fact that the car was being operated in excess of 30 miles per hour. And this evidence preponderates and is of greater weight than the evidence of the defendant and her witnesses.

Mrs. Miller testified that it was possible that she pressed upon the gas at the time she pressed upon the brake and in this way explains the physical facts established.

 Established physical facts are controlling over direct testimony when it is impossible to reconcile the physical facts with the direct testimony, but where the testimony as a whole can be reconciled then it is the duty of the court to reconcile the physical facts with the direct testimony and not disregard the direct testimony as impeached testimony. Such is the case here, for in all probability the lady did step upon the gas simultaneously with putting on the brake which accounts for the physical facts, in harmony with her and her witnesses' testimony. There being available such a plausible explanation, the court is not influenced in weighing the defendant's direct testimony by the physical facts established. Upon this issue it cannot be said that the evidence preponderates in favor of the plaintiff. Southern Ry. Co. v. Hutson, 170 Tenn., 5, 91 S. W. (2d), 290.

██ ██ (2) Was the defendant negligent in failing to anticipate and see the colt within time to have prevented the accident? She states that she first saw the colt when he was about five feet away, or she was five feet from the place of the collision, and the colt was

approaching the place running and jumping. It is the duty of the driver of an automobile to keep a diligent lookout ahead and to see all that comes within the radius of his line of vision, both in front and to the side. He is not required to turn his head at every private driveway as he passes upon a public thoroughfare, in anticipation that some person or loose horse will run out upon a city street. It is sufficient if the driver sees what falls within his side view of his lookout ahead. Stacy v. Keller, 1 Tenn. App., 80. This is the rule adopted in the case of Hornbuckle v. McCarty, 295 Mo., 162, 243 S. W., 327, 25 A. L. R., 1508 (relied upon by the plaintiff), which holds that it is the duty of the driver of an automobile to look laterally as well as straight ahead. It does not mean that the driver must continually keep turning his head from side to side, watching private driveways leading from the residences to the streets. Of course he owes a greater duty when he approaches an intersection.

▮▮ The automobile was running from 20 to 25 miles per hour and the colt was running and jumping toward the street and he fell within her line of lateral vision, while looking straight ahead, when she was five feet away from the place of the collision. We cannot say that this evidence preponderates against the holding of the trial judge that she was not guilty of negligence in not seeing the colt sooner. It must be remembered that we are reviewing this case to determine if the preponderance of the evidence is contrary to the holding of the trial judge. Code, Sec. 10622. We are not looking for any evidence to support the verdict of a jury.

And in addition to what has been stated, the driveway is obstructed by a hedge on the adjoining lot to the west, and there is only about 30 feet from east end of the hedge to the driveway. The plaintiff says that he could see the head and back of the colt over the top of the hedge. He says he drove along the street for the purpose of testing his visibility of the object. If it was necessary to do this there certainly was a question as to whether the view of the colt was obstructed. He further testified that the driver could have seen his barn some distance back from the street before she came to the hedge, but certainly the barn this distance back from the street did not fall within her lateral line of vision, and the ordinary prudent driver would not see this barn or object so far away from the street while driving a car along a street of a city. Reasonable minds might readily concede that a driver of an automobile at the rate of 20 to 30 miles per hour would not have time after passing the hedge, or within the distance of 30 feet, which is the distance from the end of the hedge to the driveway, to have prevented a collision with a bounding colt coming directly in front of the car. And the trial judge's conclusion that she was operating the car in the ordinary prudent manner is not overcome by a preponderance of the evidence.

We are not only unable to find that the evidence preponderates against the holding of the trial judge, but concur in the opinion that the accident was unavoidable. His judgment is affirmed with costs.

Ailor and McAmis, JJ., concur.