Leoda NEWPORT, Plaintiff-Appellee,

v.

CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY, a Division of Southern Railway, Defendant-Appellant.

No. 74–1782.

United States Court of Appeals, Sixth Circuit.

Feb. 5, 1975.

---

Don S. Stansberry, Jr., Baker, Worthington, Crossley & Stansberry, Huntsville, Tenn., for defendant-appellant.

Richard W. Krieg, Morton, Lewis, King & Jones, John K. King, Knoxville, Tenn., for plaintiff-appellee.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from the denial of a motion for judgment notwithstanding the verdict or in the alternative for a new trial, entered after the jury returned a verdict for plaintiff-appellee in the amount of $55,000. Jurisdiction is based on diversity of citizenship, and the law of Tennessee applies.

The case arises out of a railroad crossing accident in which plaintiff's decedent was killed. On January 14, 1970, shortly before 4 p. m., Leland Newport, a resident of Scott County, Tennessee, was driving his truck in a westerly direction on Carson Road, a public road in Scott County. This road is intersected by two sets of railroad tracks constituting the main line of the Cincinnati, New Orleans & Texas Pacific Railway. The intersection is known as Pemberton Crossing and vehicular traffic is warned of the railroad tracks by a crossbuck warning sign located on the northeastern corner of the crossing.

The railroad tracks south of Pemberton Crossing appear to be straight and level to a motorist driving west on Carson Road. Moreover, for a distance in excess of fifty feet east from Pemberton Crossing, Carson Road is also straight and level. The railroad right-of-way extends fifty feet east of the center line of the eastern set of tracks.

Along the eastern right-of-way of the railroad south of Carson Road there is a bank covered with weeds and debris which, to some extent, prevents motorists driving west on Carson Road from seeing railroad trains traveling north. Nevertheless, a motorist who is driving west is able to see fifty feet to the south of Pemberton Crossing when he is on Carson Road fifty feet from the eastern track of the railroad; ninety feet when he is forty feet away; and four hundred fifty feet when he is twenty feet away. Near the crossing, on the western side of the track is a factory from which noise emanates.

Leland Newport approached Pemberton Crossing from the east on Carson Road. At approximately the same time, one of appellant's trains was proceeding north on the eastern set of tracks at approximately 32 miles per hour and was, at the time Newport was proceeding into the crossing, some 75 to 80 feet south of it. The train had been continuously blowing its whistle for a quarter of a mile south of the crossing.

Despite the train whistle and the crossbuck, Newport, who had driven across Pemberton Crossing before, drove straight into the path of the train without looking or stopping or even slowing down. When he approached within fifteen feet of the tracks and gave no indication that he was aware of the approaching train, the train's engineer put the train into emergency in a futile attempt to stop it. Nevertheless, the train and the truck collided and Newport sustained fatal injuries.

On October 9, 1973, Leoda Newport, the wife of the deceased, filed a complaint alleging that her husband was killed because the Railroad was negligent in the operation of its train, in maintaining the right-of-way adjacent to the crossing, and in failing to employ warning devices other than a crossbuck at Pemberton Crossing. The Railroad denied that it was negligent in any of these respects and responded that plaintiff's action was barred because her husband's conduct constituted proximate contributory negligence.

The case was tried on March 14, 1974, before a jury which returned a verdict for plaintiff. On April 1, 1974, the Railroad's post-trial motions were denied.

On appeal, the Railroad contends that a judgment should have been entered for it for two reasons: (1) because it was guilty of no negligence which was the proximate cause of the accident and the death of Leland Newport; and (2) because Leland Newport was guilty of proximate contributory negligence as a matter of law.

We conclude, after a careful examination of the record and of Tennessee law, that Leland Newport's failure to stop or slow down, or even look for approaching trains at Pemberton Crossing despite the presence of a clearly visible crossbuck warning sign, constituted, as a matter of law, contributory negligence which was a proximate cause of his death. In light of this conclusion, we need not determine whether the Railroad was negligent in any respect.

As a general rule, "[t]he law in Tennessee, as elsewhere, provides that whether or not a plaintiff acted with due care is [a question] for determination by the jury." Doane Agricultural Service, Inc. v. Coleman, 254 F.2d 40, 43 (6th Cir.), cert. denied, 358 U.S. 818, 79 S.Ct. 29, 3 L.Ed.2d 60 (1958), citing Osborn v. City of Nashville, 182 Tenn. 197, 185 S.W.2d 510 (1945). Nevertheless, in some cases, where reasonable minds could reach only one conclusion—that plaintiff failed to exercise ordinary care and that his negligence was the proximate cause of his injury—it is appropriate to remove the case from the jury's consideration.

In Tennessee, "a railroad crossing is a warning of danger and a motorist is required to exercise ordinary care for his own safety, including the precautions of stopping, looking and listening where ordinary care would require as much." Maxwell v. Western Atlantic R.R. Co., 295 F.Supp. 740, 745 (E.D.Tenn.), aff'd, 406 F.2d 1326 (6th Cir. 1967). In that case, this court affirmed a judgment n. o. v. for the railroad in an action where the facts disclosed that plaintiff's decedent attempted to cross railroad tracks without stopping to look for approaching trains even though it was clear that he should have known he was at a train crossing.

In Fluckey v. Southern Ry. Co., 242 F. 468, 470 (6th Cir. 1917), this court, again applying Tennessee law, affirmed a directed verdict for the railroad rendered because plaintiff's decedent was guilty of proximate contributory negligence and explained:

Upon the first question, it is unnecessary to go into great detail. We are satisfied that the court below was right. When the automobile reached a point 40 feet from the rail, the buildings and the standing cars on the driver's left had so far ceased to obstruct his view that he could see 120 feet along the straight track upon which the car was approaching, and at that moment the car was not more than 100 feet from the point of collision. It was broad daylight, there was neither smoke nor dust to obscure the view, there was no other moving train to drown the noise of the approaching car, nor was there anything to distract the driver's attention. It is not to be disputed that, if the driver had looked at the first instant when looking would do any good, he would have seen the car coming. He was familiar with the crossing, and knew that, by reason of the obstructions, it was a dangerous crossing and must be approached cautiously. His clear duty

was not only to look as soon as he could see, but to have his machine under such control that, if necessary, he could stop before getting into the danger zone. . . . [citations omitted].

Under these undisputed facts, there can be no tenable basis for a finding that Mr. Fluckey exercised that degree of care which would be observed by a reasonably prudent man in such a situation.

In this case, although the railroad permitted debris to accumulate on the eastern side of the track to the south of Carson Road thereby obscuring the southerly view of a motorist approaching the crossing from the east, the undisputed facts disclose that the crossbuck sign was clearly visible to Leland Newport and that he failed to look, stop or slow down for an approaching train. If he had slowed down and looked after seeing the crossbuck sign, the evidence of physical facts, including the sight measurements of a civil engineer already referred to and photographs of the crossing submitted as part of the record in this appeal, render inescapable the conclusion that Leland Newport would have seen the train. *See* Southern Railway Co. v. Hutson, 170 Tenn. 5, 91 S.W.2d 290 (1936). A motorist who proceeds across a railroad track without looking for danger of which he is warned by a crossbuck sign cannot be said to have exercised due, or any, care for his own safety, and if his view is obstructed, he should slow down or, if necessary, stop to permit him to see whether it is safe to cross.

We hold, therefore, as a matter of law, that Leland Newport's failure to slow down and look for approaching trains after being apprised of that danger by the crossbuck sign constituted contributory negligence which proximately caused his injury. Accordingly, the district court erred in refusing to grant appellant's motion for judgment notwithstanding the verdict.

Reversed and remanded with instructions to enter a judgment for appellant notwithstanding the verdict.